UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ROBERT YOUNG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:19-cv-02311-TWP-MPB |
| ) | |
| DIANE E. ELROD, RACHEL M. HOUGHTON, ) | |
| REBECCA J. TRIVETT, and CHASITY ) | |
| PLUMMER-LONG, ) | |
| ) | |
| Defendants. ) | |

**ORDER DENYING DEFENDANTS' PARTIAL MOTION FOR SUMMARY JUDGMENT AND DIRECTING FURTHER PROCEEDINGS**

This matter is before the Court on a Motion for Summary Judgment as to the Issue of Exhaustion filed by Defendants Diane E. Elrod ("Dr. Elrod"), Rachel M. Houghton ("Nurse Houghton"), Rebecca J. Trivett, and Chasity Plummer-Long, (collectively "the Defendants"). (Dkt. 54.)[1] Plaintiff Robert Young ("Mr. Young"), filed this action on June 10, 2019, alleging that his civil rights were violated when Defendants were deliberately indifferent to his serious medical needs. Specifically, the Defendants violated his Eighth Amendment rights by "refusing to provide Young with proper medical care by changing Young's prescriptions, dosage amounts, and discontinuing prescriptions used to treat Young's cancer." (Dkt. 2 at 6; Dkt. 47.) The Defendants seek partial summary judgment as to any claims related to the prostate cancer treatment Mr. Young received, arguing that he failed to exhaust his available administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), before filing this lawsuit.

For the reasons explained below, the Motion for Summary Judgment as to the Issue of Exhaustion, (Dkt 54), is **denied.**

---

[1] Defendants concede Mr. Young did, in fact, exhaust his administrative remedies with regard to his complaints regarding medications prescribed to treat his stomach cancer. (Dkt. 55 at 7.)

## I. SUMMARY JUDGMENT STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). "Material facts are those that might affect the outcome of the suit under applicable substantive law." *Dawson v. Brown*, 803 F.3d 829, 833 (7th Cir. 2015) (internal quotation omitted). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page*, 906 F.3d 606, 609-10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court views the facts in the light most favorable to the non-moving party and all reasonable inferences are drawn in the non-movant's favor. *See Barbera v. Pearson Educ., Inc.*, 906 F.3d 621, 628 (7th Cir. 2018).

The substantive law applicable to this Motion for summary judgment is the PLRA, which requires that a prisoner exhaust available administrative remedies before bringing a suit concerning prison conditions. 42 U.S.C. § 1997e(a); *see Porter v. Nussle,* 534 U.S. 516, 524-25 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532 (citation omitted).

"State law establishes the administrative remedies that a state prisoner must exhaust for purposes of the PLRA." *Lanaghan v. Koch*, 902 F.3d 683, 687 (7th Cir. 2018). Where the administrative policy is silent, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002).

As the movant, the defendants bear the burden of establishing that the administrative remedies upon which they rely were available to the plaintiff. *See Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015) ("Because exhaustion is an affirmative defense, the defendants must establish

2

that an administrative remedy was available and that [the plaintiff] failed to pursue it."). "[T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross v. Blake,* 136 S. Ct. 1850, 1858 (2016) (internal quotation omitted). "[A]n inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* at 1859 (internal quotation omitted).

## II. FACTUAL BACKGROUND

Federal Rule of Civil Procedure 56, requires that the facts are presented in the light most favorable to Mr. Young as the non-moving party. *See Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Mr. Young is an Indiana prisoner incarcerated at the Plainfield Correctional Facility. (Dkt. 56-1.) He was diagnosed with stomach/colon cancer on or about March 19, 2010, and prostate cancer in March 2016. (Dkt. 36-1 at 3-4.) Mr. Young is illiterate and has learning disabilities. (Dkt. 36-1 at 2.)

The Indiana Department of Correction ("IDOC") has a grievance process—Policy and Administrative Procedure Number 00-02-301 ("Offender Grievance Process"). (Dkt. 56-1; Dkt. 56-2.) Jeremy Jones ("Mr. Jones") is the Grievance Specialist at Plainfield Correctional Facility and testified regarding the Offender Grievance Process. (Dkt. 56-1.) The purpose of the Offender Grievance Process is to provide prisoners committed to the IDOC an administrative means to resolve concerns and complaints relating to their conditions of confinement, including the medical care they receive. (Dkt. 56-1 at 2.)

### A. Access to Information and Assistance Filing Grievances

Upon an offender's entry into the IDOC, and when transferred to a receiving facility during incarceration, each prisoner is supposed to be advised of the Offender Grievance Process, and

3

provided with a copy of the policy or instructed on how to access a copy of the policy. Prisoners should also be provided with a copy (or access to a copy) of the IDOC Offender Handbook, which includes a section on the Offender Grievance Process. Mr. Young, however, did not receive a copy of the IDOC Offender Handbook until December 12, 2019. (Dkt. 36-1 at 5.) A copy of the Offender Handbook that Mr. Young purportedly received has not been provided for the record. Nor is there any evidence of what the Offender Handbook says about the Offender Grievance Process. In any event, there is no reason to believe that Mr. Young would have benefitted from a personal copy of the Offender Grievance Process or Offender Handbook, because Mr. Young is unable to read.

At the Plainfield Correctional Facility, offenders have access to a copy of the Offender Grievance Process in the law library and on their tablets. Mr. Young acknowledged on a form that he received information related to the grievance process at admission and orientation on July 10, 2017. (Dkt. 56-1 at 6; Dkt. 56-4.)

But it is unclear whether IDOC officials accommodated Mr. Young's learning disabilities and illiteracy or provided him with any assistance in his attempts to exhaust his administrative remedies. Defendants have designated no evidence concerning their efforts to accommodate Mr. Yong's illiteracy. The Offender Grievance Process states that, "[t]here shall be mechanisms in place to ensure that the offender grievance process is understood by all offenders," (Dkt. 56-2 at 7), but there is no evidence of what these mechanisms are or whether they were made available to Mr. Young.

Mr. Jones testified that, "[t]he Offender Grievance Process provides options for offenders who require assistance completing grievances." (Filing No. 56-1 at 6.) However, there is no

4

evidence explaining what these "options" include.[2] And there is no evidence of what resources were available to help Mr. Young given his limitations. Mr. Young testified that he is illiterate and needed help completing the grievance process. He also testified that in 2018, he attempted to get counselors, casework managers, custody staff, and Warden Stanley Knight to assist in the preparation of his formal grievances and grievance appeals, but prison officials refused to assist him.[3] (Dkt. 36-1 ag 4-5.) Instead, he was told to go and find another prisoner who was willing to assist. *Id.* at 5.

## B. The Offender Grievance Process

From October 1, 2017 until April 1, 2020, the Offender Grievance Process consisted of the following steps: (1) a formal attempt to resolve a problem or concern following an unsuccessful attempt at an informal resolution; (2) a written appeal to the facility Warden or the Warden's designee; and (3) a written appeal to the IDOC Grievance Manager. (Dkt. 56-1 at 2.) During this time period, a prisoner was required to attempt to resolve a complaint informally and provide evidence of the attempt before submitting a formal grievance to the Offender Grievance Specialist.

---

[2] The Offender Grievance Process only provides guidance for prisoners held in restrictive housing or without access to other offenders:

> Assistance with Preparation of Grievance
>
> In restrictive status housing units or other units where an offender does not have access to other offenders, the complaining offender may request that a staff person in the unit assist in the preparation of a grievance or an appeal. The complaining offender must sign the grievance or appeal and submit it personally. An offender cannot submit an offender grievance or appeal on behalf of another offender.

(Dkt. 56-2 at 7.)

[3] Mr. Jones testified that "Mr. Young has not asked for assistance at all regarding any grievances or appeals against medical.". (Dkt. 56-1 at 6.) That testimony cannot be accepted, however, because there is no basis to conclude that Mr. Jones has personal knowledge regarding whether Mr. Young sought assistance from other prison staff. Further, on a motion for summary judgment the court must accept the facts in the light most favorable to the non-moving party. "[S]ummary judgment is a singularly inappropriate time to resolve a 'he said, she said' kind of dispute." *Russell v. Bd. of Trustees of Univ. of Ill. at Chicago*, 243 F.3d 336, 340 (7th Cir. 2001).

5

### C. Grievance No. 104274

On October 10, 2018, Mr. Young submitted a formal grievance asserting he had been denied medication refills. (Dkt. 30-3 at 3.) The Offender Grievance Form completed by Mr. Young instructed him to provide "a brief, clear statement of [his] complaint or concern." *Id*. Mr. Young provided the following details:

> On 9-27-18 I sent an informal grievance to Becky and Rachel, both of whom work at medical. I filed the grievance because they are denieing (sic) to refill my medication on multiple requests.

*Id*. The grievance was reviewed by Nurse Houghton, the Health Services Administrator. The Grievance Response Report states:

> [Mr. Young's] complaint is not specific to medication he is requesting. I had him seen by Dr. Elrod yesterday who was not familiar with this patient so he could have second opinion. This visit was completed 10/22/18, she noted that patient was argumentative. Knee exam was completed, and nothing further needed at this time. His request for restroom pass was not approved. His medication frequency was also decreased.

(Dkt. 30-3 at 4.) The Grievance Specialist denied the grievance stating, "[y]our medication was reduced and that is why it was not refilled." *Id*.

On October 31, 2018, Mr. Young filed a formal grievance appeal of grievance log number 104274. He explains that on October 22, 2018, he had a knee examination done by Dr. Elrod, but the examination did not inform her of what was wrong. Mr. Young explains that he needs an MRI and his shoulder is still in tremendous pain. He does not mention his medications or his prostate cancer. (Dkt. 30-3 at 5.) The appeal was denied in November 2018. *Id.*; Dkt. 30-3 at 6.

### D. Mr. Young's Other Administrative Remedies

Mr. Young exhausted his administrative remedies related to his complaints regarding lamodine and loperamide, which are prescribed for his diarrhea symptoms related to colitis. (Dkt. 56-1 at 6; Dkt 30-3 at 21-26.) There are no formal grievance appeals in Mr. Young's file

6

related to any medication that he received for the treatment of his prostate cancer or complaints about the care he received for his prostate cancer. (Dkt. 56-1 at 5; Dkt. 56-3.)

On September 22, 2020 Defendants moved for summary judgment as to any claims related to Mr. Youngs prostate cancer treatment. Mr. Young was appointed counsel to assist him with his response (Dkt. 50.)[4] On December 4, 2020, Mr. Young filed a response in opposition, (Dkt. 66), and on December 17, 2020, the Defendants filed their reply. (Dkt. 69.) The Motion is now ripe for the Court's ruling.

### III. DISCUSSION

Defendants argue that Mr. Young failed to exhaust his available administrative remedies as required by the PLRA with respect to his claims related his prescription medications for prostate cancer and, as such, his claims as to that matter are barred and Defendants are entitled to judgment as a matter of law. Mr. Young contends that he did all he could to exhaust his available administrative remedies. *See Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016) (discussing various ways a grievance process may be unavailable). First, he argues that Grievance No. 104274 was sufficient. Next, he argues that the Offender Grievance Process was unavailable to him given his learning disabilities, mental illness, and illiteracy.

### A.     Grievance No. 104274

First, Mr. Young argues that Grievance No. 104274 provided a sufficient amount of detail to place the prison staff on notice that he had concerns regarding the availability of medication used to treat both his stomach and prostate cancer. The Court disagrees. In response to the grievance, the Grievance Specialist sought review from the Health Services Administrator. An evaluation with Dr. Elrod was conducted to consider Mr. Young's complaints. As a result, it was

---

[4] The Court greatly appreciates the diligent assistance provided thus far by recruited counsel, Mr. Michael A. Moffatt.

determined that Mr. Young's primary concern was with his knee and that certain medications had been reduced, which is why they were not refilled. In his grievance appeal, Mr. Young did not mention medications and instead reported that he needed an MRI of his knee and that his shoulder was in pain. (Dkt. 30-3 at 5.) In the absence of any mention of any medications in his appeal, Grievance No. 104274, even construed broadly, does not put the prison staff on notice regarding Mr. Young's concerns regarding the availability of his prostate cancer medications. *See Strong v. David,* 297 F.3d 646, 650 (7th Cir. 2002) (An offender "need not lay out the facts, articulate legal theories, or demand particular relief" so long as the grievance objects "intelligibly to some asserted shortcoming."); *Wilder v. Sutton*, 310 Fed. Appx. 10, 15 (7th Cir. 2009) ("[P]risoners must only put responsible persons on notice about the conditions about which they are complaining."). Mr. Young failed to properly complete each step of the Offender Grievance Process as to his prostate cancer claims.

### B.     Personal Circumstances and Lack of Assistance

Mr. Young argues that in light of his mental incapacity, he was unable to complete the grievance process regarding his concerns with his prostate cancer treatment. *Weiss v. Barribeau*, 853 F.3d 873, 875 (7th Cir. 2017) (excusing failure to exhaust where defendants failed to show that existing procedures could be used by prisoner suffering from mental illness). For the reasons explained below, there is a genuine issue of material fact as to whether the administrative remedies ordinarily available to prisoners were made unavailable to Mr. Young due to his personal circumstances. *Ramirez v. Young*, 906 F.3d 530, 535 (7th Cir. 2018) (holding the availability analysis must also account for individual capabilities).

The evidence taken in the light most favorable to Mr. Young for the purposes of resolving this motion for summary judgment is that he is low functioning, illiterate, and under the care of mental health staff. (Dkt. 47 at 2.) Further, the evidence submitted by Defendants reflects that,

officially, there are mechanisms to ensure prisoners understand the Offender Grievance Process and "options for offenders who require assistance completing grievances." (Dkt. 56-1 at 6.) However, Mr. Young testified that he attempted to get counselors, casework managers, custody staff, and Warden Stanley Knight to assist in the preparation of his formal grievances and grievance appeals, but prison officials refused to assist him. (Dkt. 36-1 at 4-5.) Instead, he was told to go and find an offender who was willing to assist him. *Id.* at 5. Defendants have the burden of demonstrating that there were administrative remedies available to Mr. Young that he did not pursue. In the absence of any evidence of what resources were available to assist Mr. Young, the Motion for Summary Judgment must be denied. *Lanaghan v. Koch*, 902 F.3d 683, 689–90 (7th Cir. 2018) ("A secret grievance procedure is no procedure at all...."); *King v. McCarty*, 781 F.3d 889, 896 (7th Cir. 2015) ("Prisoners are required to exhaust grievance procedures they have been told about, but not procedures they have not been told about."), *overruled on other grounds by Henry v. Hulett*, 969 F.3d 769 (7th Cir. 2020).

The fact that Mr. Young may have successfully filed grievances in the past is not dispositive. First, it is unclear whether Mr. Young filed those grievances on his own or if he was given assistance that he did not receive in filing grievances related to this action. Second, and perhaps more fundamentally, disabilities are not about the total absence of strength; they are about the presence of weakness. *See Moore v. Texas*, 137 S. Ct. 1039, 1050 (2017) (holding that lower courts erred by focusing on a defendant's adaptive strengths and ignoring his weaknesses, in contradiction to prevailing clinical standards, in assessing whether he had an intellectual disability). A person with physical disabilities may be able to claw his way up a staircase, but that should not deprive him access to an elevator. There is evidence that Mr. Young needed help filing a grievance because of his illiteracy, and grievances that he was somehow able to file in the past do not necessarily excuse IDOC officials from providing him with some assistance.

"Because exhaustion is an affirmative defense, the defendants must establish that an administrative remedy was available and that [the plaintiff] failed to pursue it." *Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015); *see also Kaba v. Stepp*, 458 F.3d 678, 681 (7th Cir. 2006). Defendants have not met their burden.

## IV.  CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment as to the Issue of Exhaustion filed by Defendants, (Dkt. [54]), is **DENIED**. The action remains stayed except for activities associated with the development and resolution of the affirmative defense that Mr. Young failed to exhaust his administrative remedies, or any other matter directed by the Court.

If the Defendants wish to withdraw their affirmative defense in lieu of having a hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), they must do so by **Wednesday, May 19, 2021**. Otherwise a hearing will be set.

**SO ORDERED.**

Date: 4/26/2021

_____
Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Robert Young, #264278
PLAINFIELD CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Douglass R. Bitner
KATZ KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com

Michael A. Moffatt
LITTLER MENDELSON PC
mmoffatt@littler.com