UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ROBERT YOUNG, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:19-cv-02311-TWP-MG |
| | ) |
| DIANE E. ELROD, RACHEL M. HOUGHTON, | ) |
| REBECCA J. TRIVETT, and | ) |
| CHASITY PLUMMER-LONG, | ) |
| | ) |
| Defendants. | ) |

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on a Motion for Summary Judgment filed by Defendants Diane E. Elrod, Rachel M. Houghton, Rebecca J. Trivett, and Chasity Plummer-Long (collectively "the Defendants") (Dkt. 112). Plaintiff Robert Young ("Mr. Young"), an inmate in the Indiana Department of Correction ("IDOC") initiated this action alleging the Defendants were deliberately indifferent to his serious medical needs. Mr. Young, with the assistance of recruited counsel,[1] has responded to the summary judgment motion. For the reasons stated below, the Defendants' Motion is **granted**.

**I.     APPLICABLE LAW**

**A.     Summary Judgment Standard**

A motion for summary judgment asks the court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Federal Rule of Civil Procedure 56(a). The court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's

---

[1] The Court thanks Michael A. Moffatt, Peter T. Tschanz, and Bianca Black for their representation of Mr. Young.

favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325.

**B.**     **Eighth Amendment Standard**

"The Eighth Amendment forbids the imposition of 'cruel and unusual punishments' against persons convicted of crimes." *McCottrell v. White*, 933 F.3d 651, 662 (7th Cir. 2019). This prohibition imposes a duty on the states, through the Fourteenth Amendment, "to provide adequate medical care to incarcerated individuals." *Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir. 2002) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical need." *Thomas v. Blackard*, 2 F.4th 716, 721–22 (7th Cir. 2021). "Thus, to prevail on a deliberate indifference claim, a plaintiff must show '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'" *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)). To survive summary judgment, Mr. Young must point to evidence that the Defendants acted with deliberate indifference—that is, that they consciously

disregarded a serious risk to his health. *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016). Deliberate indifference requires more than negligence or even objective recklessness. *Id*. Mr. Young "must provide evidence that an official actually knew of and disregarded a substantial risk of harm." *Id*.

## II.     MATERIAL FACTS

### A.     The Parties

From 2017 through 2020, Mr. Young was incarcerated at Plainfield Correctional Facility ("Plainfield"), within the IDOC. While incarcerated, he was under the care of prison medical staff.

Defendant Diane Elrod ("Dr. Elrod") was a physician who primarily served another facility but sometimes treated patients at Plainfield. Defendant Chasity Plummer-Long ("Director Plummer-Long") was Plainfield's Director of Nursing. Defendants Rachel Houghton ("Nurse Houghton") and Rebecca Trivett ("Nurse Trivett") were nurses at Plainfield.

### B.     Mr. Young's Medical Conditions

Sometime before entering IDOC custody in 2017, Mr. Young was diagnosed with prostate cancer. (Dkt. 114-3 at 8, Young Depo. 27:12−29:7.) He continued to receive cancer treatment and monitoring from outside specialists while in prison. *Id.* at 17−18, Young Depo. 65:11−67:13. Also before entering IDOC custody, Mr. Young was treated for ulcerative colitis. *Id.* at 10, Young Depo. 36:15−37:1. As part of this treatment, a surgeon had removed roughly nine feet of Mr. Young's small intestine. *Id.* As a result of these maladies and treatments, Mr. Young experiences diarrhea, loose bowels, gassiness, and incontinence.

In October 2018, Mr. Young had several active prescriptions, including Imodium to treat his diarrhea and loose bowels, Gas-X to treat his gassiness, and Flomax to help control his urination. (Dkt. 114-2 at 32−33 (medical records) Dkt. 114-3 at 7, Young Depo. 24:20−21;

3

*id.* at 14, Young Depo. 51:18−52:9.)  Mr. Young also had access to adult diapers, though "sometimes it was [like] pulling hair to get them." (Dkt. 114-3 at 11, Young Depo. 38:11−16.)

C.  **Dr. Elrod's Treatment**

On October 22, 2018, Dr. Elrod met with Mr. Young and notified him that she was reducing his Imodium dosage from seven doses per week to four. (Dkt. 114-1, ¶ 4 (Elrod Declaration); Dkt. 114-2 at 32.)  Dr. Elrod asserts that she reduced Mr. Young's Imodium dosage due to the risk of serious side effects from long-term use at high doses.  (Dkt. 114-1, ¶ 4.)  She explained this to Mr. Young at the October 2018 visit.  *Id.*  In her treatment notes, Dr. Elrod noted that Mr. Young "continues to argue with me and we are getting nowhere."  (Dkt. 114-2 at 32.)

On November 16, 2018, Dr. Elrod again met with Mr. Young.  According to Dr. Elrod, she decreased his Imodium dosage to three per week at this visit. (Dkt. 114-1, ¶ 6.)  But Mr. Young believes that she discontinued it altogether.  (Dkt. 114-3 at 19−20, Young Depo. 73:2−74:1 ("I don't think she reduced. I believe she took it away.").)  Mr. Young received a "medical survey of it that said she took [Imodium] away from me because I was [argumentative]." *Id.* at 15, Young Depo. 54:3−5.  Mr. Young did not recall when his Imodium prescription resumed after Dr. Elrod discontinued it, but he thought it was "maybe about three, four years" prior to his January 2022 deposition. *Id.* at 14−15, Young Depo. 53:24−54:1.

D.  **Nurse Houghton's, Nurse Trivett's, and Director Plummer-Long's Treatment**

Nurse Trivett denied Mr. Young his Imodium and Flomax.  Director Plummer-Long took him off of Imodium and Gas-X and that she denied him a medical diet. Mr. Young did not recall during his deposition what Nurse Houghton did wrong, but he testified that "she was probably in the mix of it." *Id.* at 20−21, Young Depo. 75:1−80:21.

4

### III. DISCUSSION

Mr. Young has suffered from a variety of medical issues, including prostate cancer and ulcerative colitis. As a result of these maladies and their treatments, he regularly experiences diarrhea, loose bowels, gassiness, and incontinence, and he takes medicine to treat all these symptoms. In this lawsuit, he alleges the Defendants were deliberately indifferent to his medical needs. The Defendants have moved for summary judgment and Mr. Young has responded. In seeking summary judgment, the Defendants argue that (1) Mr. Young's symptoms do not constitute an objectively serious medical condition, and (2) they were not deliberately indifferent to those symptoms. The Court addresses each argument in turn.

### A. Allegations at Issue

Mr. Young alleged in his Complaint that the Defendants "changed [his] prescriptions, [changed his] dosage amounts, and discontinued prescriptions used to treat [his] cancer." (Dkt. 2 at 4.) Through the course of discovery and summary judgment briefing, it has become clear that Mr. Young does not assert that the Defendants failed to provide proper cancer treatment. Indeed, there is no evidence that the Defendants participated in Mr. Young's cancer treatment at all. Instead, Mr. Young alleges that the Defendants were deliberately indifferent to the gastrointestinal symptoms that resulted from his cancer treatment. *See*, *e.g.*, Dkt. 119 at 6 (response to motion for summary judgment) (explaining that "all of the digestive issues Plaintiff suffered during his incarceration were side-effects of his cancer treatment."). Accordingly, the Court grants summary judgment on any claims regarding cancer treatment.

The Defendants do not argue that Mr. Young is barred from litigating his claims based on allegations regarding treatment of his gastrointestinal symptoms. *Cf. Whitaker v. Milwaukee Cty., Wisc.*, 732 F.3d 802, 808 (7th Cir. 2014) (plaintiff may not "introduce a new factual basis not

5

previously presented in the pleadings" at summary judgment stage).  Because the parties agree that Mr. Young is proceeding on claims that the Defendants failed to properly care for his gastrointestinal symptoms, the Court will assess the merits of those claims.

**B.      Objectively Serious Medical Condition**

"A medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated."  *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010).  Still, not every "medically recognized condition involving some discomfort can support an Eighth Amendment claim."  *Thomas v. Blackard*, 2 F.4th 716, 722 (7th Cir. 2021) (cleaned up).

Mr. Young does not point to evidence that his gastrointestinal symptoms were painful or that they created a risk of further significant injury.  Instead, he argues that these symptoms, when left untreated, prevented him from maintaining his dignity in prison. (Dkt. 119 at 8; *see* Dkt. 114-3 at 15 (Young Depo. 55:3−8) (recounting an episode of losing his bowels in the prison yard and explaining, "You know, it's a little community. You know, it's not fair to my manhood.").)

The Court agree with Mr. Young that deliberate indifference to treatment which allows him to maintain his dignity can be considered cruel and unusual punishment.  "Prisoners retain the essence of human dignity inherent in all persons.  Respect for that dignity animates the Eighth Amendment prohibition against cruel and unusual punishment." *Brown v. Plata*, 563 U.S. 493, 510 (2011).  So while Mr. Young's symptoms may not satisfy the commonly applied standards for an objectively serious medical condition, the Court agrees for purposes of this Order that deliberate indifference to his symptoms would violate the Eighth Amendment.

C.  **Deliberate Indifference**

The Defendants are entitled to summary judgment, however, because Mr. Young has not pointed to evidence that they were deliberately indifferent to his symptoms. The Court will consider the allegations against Dr. Elrod and the nurses separately.

1.  **Dr. Elrod**

The Court accepts as fact Mr. Young's testimony that Dr. Elrod discontinued his Imodium prescription. But this fact alone is not enough for a jury to find that Dr. Elrod was deliberately indifferent to his condition. Mr. Young points to no evidence that would allow a jury to determine how long he was without Imodium. Indeed, the best evidence regarding timing is Mr. Young's testimony that the prescription resumed "maybe about three, four years" prior to his January 2022 deposition. (Dkt. 114-3 at 14−15, Young Depo. 53:24−54:1.) Even assuming the prescription resumed three year prior to his January 2022 deposition, this would mean the prescription resumed around January 2019—less than three months after Mr. Young testified that Dr. Elrod discontinued it in November 2018.

Moreover, a jury could not find based on the record before the Court that Dr. Elrod failed to exercise her medical judgment in discontinuing (or decreasing) the medication. Dr. Elrod asserts in her declaration that long-term use of Imodium at high doses creates a risk of adverse side effects. (Dkt. 114-1, ¶ 4.) She told Mr. Young as much when she lowered his dosage. *Id.* Mr. Young testified that he received a "medical survey" notifying him that his Imodium was discontinued because he was argumentative. (Dkt. 114-3 at 15, Young Depo. 54:3−5.) This appears to be a reference to Dr. Elrod's treatment notes from Mr. Young's visit on October 22, 2018.[2] Dr. Elrod indeed notes, "He continues to argue with me and we are getting nowhere."

---

[2] Despite being represented by counsel, Mr. Young has not pointed to any other document that would allow a jury to find Dr. Elrod changed or ended his Imodium prescription because he was argumentative.

7

(Dkt. 114-2 at 32.) But the notes do not indicate that this was why Dr. Elrod changed Mr. Young's prescription. *Id.* On the contrary, Mr. Young's account of the visit indicates that he and Dr. Elrod began arguing *after* she notified him of the change in his prescription:

> Q: Why did Dr. Elrod decrease your [Imodium]?
>
> A: She said I didn't need it.
>
> Q: Why is that?
>
> A: You know, I can't answer that question. . . . Because at that point I asked her if she was a real doctor, and she answered me back, yes, I am. We had a little more conversation, and she kicked me out.

(Dkt. 114-3 at 15, Young Depo. 57:14−23.)

Finally, Mr. Young has designated no evidence from which a jury could find that Dr. Elrod knew the change to Mr. Young's Imodium prescription would cause him excessive pain or loss of dignity. Absent a finding of such knowledge, a jury could not find that Dr. Elrod was deliberately indifferent to Mr. Young's condition. *Petties*, 836 F.3d at 728. For all these reasons, Dr. Elrod is entitled to summary judgment.

### 2. Nurse Houghton, Nurse Trivett, and Director Plummer-Long

The Court accepts as fact Mr. Young's testimony that Nurse Trivett denied him Imodium and Flomax. The Court also accepts as fact Mr. Young's testimony that Director Plummer-Long took him off of Imodium and Gas-X and that she denied him a medical diet. But, as with Dr. Elrod, there is no evidence of how long these deprivations lasted. The only medical records provided to the Court show that Mr. Young had ongoing prescriptions for Imodium, Flomax, and Gas-X in late 2018. *See generally* Dkt. 114-2. The records also show that Mr. Young had a medical diet order implemented on November 1, 2018, to run through May 1, 2019. *Id.* at 14. And as with Dr. Elrod, there is no evidence that Nurse Houghton, Nurse Trivett or Director Plummer-Long

8

failed to exercise medical judgment or that they were aware their actions would cause Mr. Young excessive pain or loss of dignity.  As the Seventh Circuit has often stated, "summary judgment 'is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events.'" *Koszola v. Bd. of Educ. of City of Chi.*, 385 F.3d 1104, 1111 (7th Cir. 2004) (quoting *Johnson v. Cambridge Indus., Inc.,* 325 F.3d 892, 901 (7th Cir. 2003)).  Accordingly, summary judgment must be entered.

### IV.    CONCLUSION

Although the Court has great sympathy for Mr. Young and his condition, based on the record before the Court, no reasonable jury could find that any of the Defendants were deliberately indifferent to his condition. Therefore, the Defendants' Motion for Summary Judgment, Dkt. [112], is **GRANTED**.  Final judgment shall now enter.

**SO ORDERED.**

Date:  6/24/2022

_____
Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Peter T. Tschanz
LITTLER MENDELSON, P.C. (Indianapolis)
ptschanz@littler.com

Douglass R. Bitner
KATZ  KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com

Rachel D. Johnson
KATZ  KORIN CUNNINGHAM, P.C.
rjohnson@kkclegal.com

Michael A. Moffatt
LITTLER MENDELSON P.C.
mmoffatt@littler.com

Bianca Black
LITTLER MENDELSON, P.C. (Indianapolis)
bblack@littler.com